<strong>United States District Court</strong><br>For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS CASTILLO,<br><br>    Plaintiff,<br><br>  v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br>PERRY HOLLIS; MARTIN SCANLAN;<br>DAVID SMITH; RON ROTH; COUNTY OF<br>SAN MATEO; FRANK KASTELL; SHERYL<br>WOLCOTT; and DOES 1–50,<br><br>    Defendants.<br>                                                                    / | No. C 05-00284 WHA<br><br>**ORDER RE SUMMARY JUDGMENT MOTIONS: (1) DENYING PLAINTIFF'S MOTION; (2) GRANTING SAN MATEO DEFENDANTS' MOTION; (3) GRANTING IN PART AND DENYING IN PART SAN FRANCISCO DEFENDANTS' MOTION; (4) GRANTING AND DENYING REQUESTS FOR JUDICIAL NOTICE; AND (5) GRANTING MOTION TO STRIKE** |

**INTRODUCTION**

In this Section 1983 action for unlawful arrest and excessive force, all parties have moved for partial or full summary judgment. Defendants divide into two groups: those associated with the San Francisco Police Department and those associated with San Mateo County. Plaintiff and the San Francisco defendants have requested judicial notice of certain documents. The San Mateo defendants object to certain items of plaintiff's evidence. Plaintiff moves to strike those objections.

• Because there was probable cause to arrest plaintiff, defendants' motions for summary judgment on false-arrest liability under state law and 42 U.S.C. 1983 are **GRANTED** and plaintiff's motion on this issue is **DENIED**.

1 • There is evidence sufficient to support a verdict in favor of plaintiff on the City and County of San Francisco's Section 1983 *Monell* liability for excessive force. Its motion for summary judgment on this issue therefore is **DENIED**.

• Plaintiff's claims against the San Francisco defendants for excessive force under state and federal law is subject to disputes about material facts. His motion for summary judgment on this issue therefore is **DENIED**.

• There is no evidence that the San Mateo County defendants used excessive force under Section 1983 or state law. Their motion for summary judgment on that issue therefore is **GRANTED**.

• All but three of the requests for judicial notice are **GRANTED**.

• The motion to strike is **GRANTED**.

The only claims remaining for trial are the Section 1983 and state-law claims against the San Francisco defendants for excessive force.

**STATEMENT**

On December 4, 2003, plaintiff Alexis Castillo entered a security checkpoint at San Francisco International Airport, planning to board a flight for Phoenix (Castillo Decl. ¶¶ 3, 5 (Dec. 15, 2005)). In the X-ray machine, his carry-on garment bag appeared to contain a tool. Upon further examination, security personnel found a metal cutting tool within a shirt, which remained in its original plastic wrapping. They called police (Silberman Decl. ¶ 6, Exh. E (Security Screening Incident Report)).

The tool, which was presented in court at the hearing, closely resembles the yarn scissors pictured to the right. It has two blades sharpened on one side each. It is slightly more than four inches long, with blades that are one-and-a-half to two inches long. Unless the handles are squeezed together, the blades stay apart, so that the tool is double-pointed. When


Similar Cutting Shears

2

1  the handles are squeezed, the points come together to form a single tapered end. It resembles
2  common scissors in some regards, although the blades are thinner and sharper and the handles
3  have no holes for fingers.

4  Castillo told San Francisco Police Officer Martin Scanlan, the first officer to arrive, that
5  he did not know how the tool got inside his shirt. Officer Scanlan believed plaintiff. Soon
6  thereafter, San Francisco Police Sergeant David Smith and Captain Ron Roth arrived at the
7  checkpoint. Captain Roth told Sergeant Smith to have plaintiff arrested and taken to a police
8  substation. Sergeant Smith, in turn, ordered Officer Scanlan to handcuff plaintiff (Weingus
9  Decl. ¶¶ 2, 8 (Dec. 14, 2005), Exhs. 1 (Scanlan Dep. 45–46, 52, 54, 56) & 7 (Roth Dep. 20)).

10  Plaintiff asked not to be handcuffed because he recently had undergone shoulder
11  surgery. Officer Scanlan told him that he nevertheless would handcuff him. Plaintiff asked him
12  to do so gently. With plaintiff's hands behind his own back, Scanlan handcuffed him "very
13  slowly." Although Officer Scanlan later said that "everything was fine" at that point, plaintiff
14  stated in a declaration that he was in pain from the handcuffing and told the police officer so.
15  Another officer, Perry Hollis, arrived to take plaintiff to a police station at the airport in his
16  patrol car. Office Scanlan told Hollis about plaintiff's injured shoulder. Plaintiff said that
17  during the ride he complained to Officer Hollis about being in pain but that Hollis ignored him.
18  Hollis stated that he could not recall whether plaintiff told him he was in pain during that ride
19  (Weingus Decl. ¶¶ 2, 3 (Dec. 14, 2005), Exh. 1 (Scanlan Dep. 68); Exh. 2 (Hollis Dep. 23, 27);
20  Castillo Decl. ¶¶ 9–10).

21  At the airport station, the handcuffs were removed from one of plaintiff's wrists and
22  locked to a rail. Sergeant Smith arrived and told Officer Scanlan to book plaintiff on charges of
23  violating California Penal Code Section 171.5 and to take him to the San Mateo County jail in
24  Redwood City (Weingus Decl. ¶ 2 (Dec. 14, 2005), Exh. 1 (Scanlan Dep. 75); Castillo Decl. ¶¶
25  11-12). Sections 171.5(b) and (c)(3) prohibit the knowing possession, within any "sterile area"
26  of an airport, of a "[a]ny box cutter or straight edge razor." A "sterile area" is a part of the

3

airport "to which access generally is controlled through the screening of persons and property." Section 171.5(a)(3). Box cutter and straight-edge razor are not defined in the penal code.[1]

About thirty minutes after plaintiff was taken to the airport station, Captain Roth called San Mateo County Sheriff's Detective Frank Kastell to ask whether the cutting tool found in plaintiff's shirt was among those potential weapons barred under California Penal Code Section 171.5 from secure areas of airports. Kastell stated that he did not know. Kastel later spoke with Officer Scanlan and received more information about the tool. Kastell, in turn, spoke with San Mateo County Deputy District Attorney Sheryl Wolcott. She told him that the district attorney's office might be able to prosecute plaintiff under Section 171.5. Detective Kastell told Officer Scanlan that he had spoken with Ms. Wolcott and that she "confirmed . . . that the scissors could be construed as a weapon and that it is an arrestable offense under 171.5." Kastell claims that he did not instruct Officer Scanlan to book plaintiff on those charges. Scanlan wrote in his police report, however, that Detective Kastell "told me to book . . . Castillo for PC 171.5 c 3 Airport sterile area, straight edge." All of the foregoing took place before plaintiff was taken from the airport to the jail in Redwood City (Silberman Decl. ¶¶ 4, 12, 14 Exh. K (Roth Dep. 36 (Aug. 18, 2005)); Exh. M (Kastell Dep. 32, 41–42, 51); Exh. O (Wolcott Dep. 17, 19–21); Weingus Decl. ¶ 4, Exh. 3 (Scanlan Incident/Investigative Report)).

Before leaving the airport police station, the original pair of handcuffs, belonging to Officer Scanlan, were removed and Officer Hollis replaced them with his own. Plaintiff's account of his treatment at the hands of Officer Hollis differs materially from that given by the police officer himself. Plaintiff stated that Hollis was "much rougher than Scanlan" and handcuffed him with a "sudden, sharp motion" that caused him "significant pain." Plaintiff stated that Hollis then pushed him "aggressively" into his patrol car, causing plaintiff to lose his balance and suffer "sharp shoulder pain." Plaintiff said he told Hollis of this. During the ride, plaintiff said, he frequently lost his balance and then aggravated his pain trying to right himself.

---

[1] This order takes judicial notice of the facts that San Francisco International Airport is operated by the City and County of San Francisco but located in San Mateo County. *See* FRE 20(b)(1), (c). The San Francisco Police Department has primary responsibility for law enforcement at the airport (Silberman Decl. ¶ 19, Exh. R (O'Keefe Dep. 13, 15)).

4

He was in "severe pain" throughout the ride. Plaintiff asked Officer Hollis to remove or reposition the handcuffs. Plaintiff claims Hollis ignored him and continued driving to the jail. The ride, with rain and heavy traffic, took about thirty to thirty-five minutes on U.S. Highway 101. At one point, plaintiff claimed, Officer Hollis refused to remove the handcuffs and told plaintiff he was "full of shit."

Hollis denied pushing plaintiff into the patrol car. He explained that he refused to stop the car to change the position of plaintiff's handcuffs because, at the time it was requested, they were five minutes from the jail and he did not want to stop his car on the freeway for safety reasons, given that it was rush hour and cars were traveling sixty to seventy-five miles per hour. Once at the jail, the handcuffs remained on plaintiff for another five to twenty minutes. He was released about four hours after arrival (Castillo Decl. ¶¶ 13–15; Weingus Decl. ¶ 3 (Dec. 14, 2005), Exh. 2 (Hollis Dep. 47-48, 51–53)). Plaintiff claims that the handcuffing re-injured his shoulder.

Plaintiff was charged with two misdemeanors: one for violation of Penal Code Section 171.5(c)(3) and one for attempted violation of the same section. The Superior Court later granted the prosecution's motion to dismiss the case because it could not fit the cutting tool into the statutory language barring box cutters and straight-edge razors. Finally, the court found that Mr. Castillo was factually innocent (San Francisco Defs.' Req. for Judicial Notice, Exh. A (Docket, *People v. Castillo*, Case No. NM336136A, San Mateo Super. Ct.); Weingus Decl. ¶ 6 (Dec. 14, 2005), Exh. 5 (People's Resp. to Def.'s Motion to Dismiss, *People v. Castillo*).

**ANALYSIS**

Summary judgment is proper where the pleadings, depositions, declarations, attached documents and other evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c), (e); 28 U.S.C. 1746 (allowing substitution of declaration made under penalty of perjury for sworn affidavits). A nonmoving party who bears the ultimate burden of proof at trial must "designate specific facts showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). It is not the task of the district court to scour the record in search of a genuine issue of triable

1  fact. The nonmoving party has the burden of identifying with reasonable particularity the
2  evidence that precludes summary judgment. *Keenan v. Allen*, 91 F.3d 1275, 1279 (9th Cir.
3  1996). A genuine dispute as to a material fact exists if there is sufficient evidence for a
4  reasonable jury to return a verdict for the nonmoving party. On summary judgment, the
5  "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in
6  his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252, 255 (1986).

7                              *                    *                    *

8   Plaintiff makes two claims against all defendants. The first is pursuant to 42 U.S.C. 1983
9  for violations of the Fourth and Fourteenth Amendments, alleging unreasonable seizure and
10 excessive force in arresting and detaining him. The second is for excessive force and
11 unreasonable seizure pursuant to California Government Code Sections 815.2, 820(a) and 820.4.
12  Title 42 U.S.C. 1983 bars anyone acting under color of state law from subjecting a person
13 within the United States to "the deprivation of any rights, privileges, or immunities secured by
14 the Constitution." The Fourth Amendment bars unreasonable searches and seizures of people.
15 The California state-law provisions make public employees liable for injuries to the same extent
16 as a private person, and hold public entities liable for injuries caused by employees within the
17 scope of their employment. *See* §§ 815.2(a) and 820(a). An employee is not liable if he or she
18 exercises due care in the execution or enforcement of any law, although that provision does not
19 apply to false arrests or imprisonments. *See* § 820.4.

20  **1.    Evidentiary Issues.**

21          **A.    Objections to Evidence and Motion to Strike Objections.**

22  Plaintiff moves to strike the San Mateo defendants' objections to his evidence. Civil
23 Local Rule 7-3(d) bars litigants from filing any "additional memoranda, papers or letters," other
24 than notices of new judicial opinions, without prior court approval, after the reply brief has been
25 filed. On January 5, the San Mateo County defendants filed their reply on their motion for
26 summary judgment. On January 9, they filed objections without first obtaining the Court's
27 approval. No further replies were filed. The objections fall within the scope of the materials that
28 cannot be submitted without prior approval. *See, e.g.*, *Bauman v. DaimlerChrysler AG*, No. C

6

04-00194 RMW, 2005 WL 3157472 at *3 (N.D. Cal. tentatively granting def.'s motion to dismiss Nov. 22, 2005) (barring filing of additional brief and exhibits without approval). The objections therefore are stricken.

### B. Requests for Judicial Notice.

A court must take judicial notice of adjudicative facts if a party requests that it do so, supplies the necessary information to decide the request and the facts are "not subject to reasonable dispute" because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FRE 201 (a), (b), (d).

None of the requests in the instant case is opposed, except in the San Mateo County defendants' invalid objections. The San Francisco defendants and plaintiff request the Court to take notice of various documents but not the underlying truth of any assertions in those documents. The documents fall into three categories: court records, other government records and material from the Internet. The Court takes judicial notice that the court documents were filed in their respective cases. The other government records, such as public Transportation Security Administration documents, also merit judicial notice. The Court, however, rejects plaintiff's request to take notice of certain Internet material: two definitions of words from the site www.dictionary.com and images of cutting tools from the site www.euromercerie.cn/scissors.htm (Pl.'s Req. Judicial Notice in Supp. of Pl.'s Motion for Summ. J.; Weingus Decl. (Dec. 14, 2005), Exhs. 12, 17–18). Internet sources such as these are subject to instantaneous change, often with no archival material readily available. They are therefore not "capable of accurate and ready determination" pursuant to Rule 201.

### 2. Section 1983 Claim.

### A. False Arrest.

Under certain conditions, a public employee accused of a constitutional violation is entitled to immunity from suit. The first step in this inquiry is determining whether the plaintiff has alleged a constitutional violation. In the case of a defense motion for summary judgment, the plaintiff also must support it, as necessary, with sufficient evidence. If there is no violation, the inquiry has ended in the defendant's favor. If, however, "a violation could be made out on a

7

favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." It is not enough to determine that, as a general principle, a certain right exists. It must have been objectively clear, in the particular situation confronted by the official, that his actions were unlawful. *See Saucier v. Katz*, 533 U.S. 194, 199–202 (2001) (internal quotation marks omitted).

In the instant case, the individual defendants are accused of violating plaintiff's Fourth Amendment rights by arresting him without probable cause to believe he had committed a crime. The core of plaintiff's argument on this point is that the tool found in his bag was not a box cutter or straight-edge razor and that there was therefore no probable cause to believe he knowingly possessed, or attempted to possess, such an instrument in violation of Penal Code Section 171.5. Defendants' argue that it was reasonable to suspect him of violating that statute. They also claim there was reason to suspect him of violating Penal Code Section 12020(a)(4), which prohibits people from carrying, concealed on their persons, any dirk or dagger.

To arrest someone, there must be probable cause to believe that he or she has committed a crime, is committing a crime or is about to commit a crime. *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause requires less certainty than either the preponderance-of-evidence or beyond-a-reasonable-doubt standards. It requires merely "a reasonable ground for belief" that the suspect is guilty. *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). The reasonableness of the belief is judged against "an objective standard: would the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate?" *Terry v. Ohio*, 392 U.S. 1, 21 (1968). If the officer has probable cause to believe a crime has been committed, he or she may arrest the suspect without a warrant in a public place whether the suspected offense was a felony or a misdemeanor. *United States v. Watson*, 423 U.S. 411, 423–24 (1976) (felony); *Villafuerte v. Lewis*, 75 F.3d 1330, 1342 (9th Cir. 1996) (misdemeanor outside officer's presence).

For an officer to have probable cause to believe a person violated Penal Code Section 12020(a)(4), he or she must have a reasonable ground for believing that the person was (1) carrying a dirk or dagger (2) concealed (3) "upon his or her person." A dirk or dagger is "a knife

8

or other instrument with or without a handguard that is capable of ready use as a stabbing weapon that may inflict great bodily injury or death." Penal Code § 12020(c)(24). In the context of a concealed handgun, a person has the weapon upon his or her person even if it is in a suitcase he or she is carrying. *People v. Dunn*, 61 Cal. App. 3d Supp. 12, 14 (Cal. App. Dep't Super. Ct. 1976) ("[A] handgun concealed in a suitcase and carried by appellant is sufficiently 'upon his person' to constitute a violation of section 12025."); *see also People v. Aubertin*, No. C047754, 2005 WL 2404605 at *2–3 (Cal. Ct. App. 3d Dist. *aff'g in part and rev'g in part* conviction Sept. 30, 2005) (holding that gun in suitcase is readily accessible and citing *Dunn* with approval) (unpublished); *People v. Singh*, No. C041661, 2005 WL 859288 at *3 (Cal. Ct. App. 3d Dist. *aff'g in part and rev'g in part* finding of probation violation April 15, 2005) (citing *Dunn*) (unpublished).

In the instant case, there was probable cause to believe plaintiff had violated Section 12020(a)(4). Considering only the undisputed facts, the tool meets the definition of a dirk or dagger. *See* § 12020(c)(24). Unlike a folding knife, the tool's points were fixed in a position that would allow a user to stab someone with them. Furthermore, it was reasonable to believe the tool to be able to inflict great bodily injury or death. With its streamlined shape, it could inflict a deep enough stab wound to do serious damage. Given *Dunn*, it was reasonable for an officer to believe that, even though the tool was in plaintiff's garment bag, he was carrying it on his person, within the meaning of the statute. There is no dispute that the knife was concealed. Although plaintiff told police that he did not know anything about the tool, its location in his garment bag was objective evidence that he knowingly possessed it.

Plaintiff claims that there was no probable cause to believe he was carrying the tool "upon his person" in the context of Section 12020(a)(4). He cites *People v. Ruiz*, 88 Cal. App. 502 (Cal. Dist. Ct. App. 1928). In *Ruiz*, a man convicted of "carrying concealed upon his person . . . a dagger contended that the trial judge had erred by not telling the jury it must acquit if he was carrying the weapon "outside his clothing." The appellate court held that there was no error because the trial judge had given substantially the same instruction by stating that one of the elements of the crime was that the weapon was "concealed upon his person." *Id.* at 503, 505. If

9

1  the appellate court had wanted to base this holding on the narrow definition of "upon the person"
2  advocated by plaintiff here, presumably it could have done so. But it did not. Nor is that point
3  dictum in *Ruiz*. The decision therefore does not support plaintiff's contention that the officers
4  here would have been unreasonable to believe plaintiff had violated Section 12020(a)(4).

5  Plaintiff further contends that the statute would be rendered absurd by interpreting it to
6  criminalize carrying daggers in one's garment bag. He stated at the hearing that such an
7  interpretation might penalize walking out of a cutlery store with a kitchen knife in a shopping
8  bag. That argument may someday persuade a California court or the legislature to change or
9  clarify the law. This Court, however, must take California law as it stands *now*. The law *now* is
10 that a weapon is "upon the person" even when it is in carried luggage. It was therefore
11 reasonable for officers to believe plaintiff had violated the law.

12 Given that there was probable cause to arrest for a violation of Section 12020(a)(4), there
13 is no need to consider whether there was probable cause to believe he had violated Section
14 171.5. Probable cause as to one offense is sufficient to justify the arrest, even if the officers did
15 not have that crime in their minds. The relevant inquiry for the probable cause analysis is
16 whether there was *any* law that the officers, knowing what they knew at the time of the arrest,
17 could reasonably have believed plaintiff violated. *See Terry*, 392 U.S. at 21.

18 Even if there had not been probable cause to arrest plaintiff under Section 12020, the
19 officers would be entitled to summary judgment under the second prong of the qualified-
20 immunity test. Plaintiff's purported right to be free of arrest under Section 171.5 in the
21 circumstances of this case was not clearly established at the time. No California court or statute
22 had ever limited the definition of box cutter or straight-edge razor to exclude the type of tool
23 found in plaintiff's garment bag. Their belief that such a tool, given its apparent ability to cut
24 carpets, would be barred under Section 171.5 was reasonable.

25 For the reasons stated above, the Court grants the individual defendants' motions for
26 summary judgment on this issue. Because the arrest was proper, the municipalities are also
27 entitled to summary judgment here. Plaintiff's motion for summary judgment on this issue is
28 denied.

10

**B.     Excessive Force.**

Plaintiff has moved for summary judgment on the Section 1983 excessive-force liability only against the San Francisco defendants. All the San Mateo County defendants moved for summary judgment on this issue. The City and County of San Francisco moved for summary judgment on this issue but the individual San Francisco police officers did not.[2]

Police violate the Fourth Amendment if they use force that is not objectively reasonable under the circumstances of the case. These circumstances include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000).

In the instant case, the severity of the crime was moderate. Possession of a dirk or dagger in violation of Penal Code Section 12020 is punishable by one year or less in a county jail or in a state prison. Section 12020(a). Under California law, that makes it a felony unless the person is not sentenced to serve time in prison. Cal. Penal Code §§ 17(a), (b)(1). A violation of Section 171.5 is a misdemeanor, punishable by imprisonment in jail for six months or less and by a fine of up to $1,000. Section 171.5(e). There is no evidence that police believed plaintiff to be an immediate threat to anyone's safety, or that he was resisting arrest or attempting to flee.

**(1)     Plaintiff's Motion.**

In considering plaintiff's motion, the San Francisco defendants' evidence must be accepted and all justifiable inferences in their favor must be drawn from it. *See Anderson*, 477 U.S. at 255. Such an interpretation of the San Francisco defendants' evidence renders the following picture. Officer Scanlan, knowing about plaintiff's recent surgery, handcuffed him very slowly behind his back. At that point, plaintiff was not showing signs of pain. Officer

---

[2] Plaintiff states that no San Francisco defendant seeks summary judgment on the excessive-force issue. He therefore does not address that issue in his opposition to San Francisco's motion, except by reference to the briefs he filed in connection with his own motion for summary judgment (Opp. 1, S.F. Defs.' Motion for Summ. J.). In fact, the City and County of San Francisco *did* move for summary judgment on this issue, as evidenced by its statement that "the City is entitled to summary judgment with respect to Plaintiff's *Monell* claim based on the alleged false arrest *and excessive force*" (Br. 15 (emphasis added)).

11

1  Hollis said he could not recall whether plaintiff told him, during the ride to the airport station,
2  that he was in pain. It is therefore a plausible inference that plaintiff did not tell Officer Hollis
3  he was in pain then. At the airport station, the handcuffs were removed from one of plaintiff's
4  wrists and locked to a rail. Upon leaving the airport, handcuffs were put back on plaintiff's other
5  wrist. Officer Hollis said he did not push plaintiff roughly into the patrol car. He said plaintiff
6  asked him to reposition the handcuffs or unhandcuff him when they were traveling down a
7  freeway in the rain at rush hour, five minutes away from the jail. A jury could reasonably find
8  that it was not excessive to prolong the handcuffing for another five minutes, given the danger of
9  stopping. When viewed in this light there is, more generally, sufficient basis on which a jury
10 could find that San Francisco defendants were not liable for any excessive force. The Court
11 therefore cannot grant summary judgment on this issue to plaintiff.

**(2)     San Mateo County Defendants' Motion.**

The San Mateo defendants argue that they are entitled to summary judgment on the issue of liability for excessive force because they did not directly or indirectly exert any force upon plaintiff. It is not alleged that Detective Kastell or Deputy District Attorney Wolcott ever laid hands on plaintiff. There is no allegation that they influenced the manner in which he was arrested. The only theory of liability advanced by plaintiff is that the San Mateo defendants are liable for excessive force because they caused, in part, plaintiff's arrest, which in turn led to the allegedly excessive force.

This orders accepts, for the purposes of argument on this issue, plaintiff's contentions that the San Mateo defendants played a causal role in plaintiff's arrest and that he was subjected to excessive force. This is not enough to withstand summary judgment in favor of the San Mateo on this issue. As stated, the arrest was proper. Simply causing a lawful arrest does not make a party liable for subsequent excessive force at the hands of a third party. There is no evidence that the San Mateo defendants even knew that the San Francisco defendants had handcuffed plaintiff prior to his arrival at the jail. Plaintiff makes no allegation that he was subjected to excessive force by any San Mateo defendant after his arrival at the jail. All of the

12

injury he claims occurred before his arrival there. For these reasons, the San Mateo defendants are entitled to summary judgment on the issue of Section 1983 liability for excessive force.

### (3)  City and County of San Francisco's Motion.

For a municipality to be liable under Section 1983, there must have been an unconstitutional action taken due to governmental custom, or to implement or execute a policy, regulation or decision adopted by the municipality. The policy or custom must be adopted by the municipality's lawmakers or by "those whose edicts or acts may fairly be said to represent official policy." A municipality cannot be held liable merely because it employs a tortfeasor. *Monell v. Dep't of Soc. Srvcs. of N.Y.*, 436 U.S. 658, 690–91, 694 (1978). A municipality may be held liable if it is "obvious" that specific employees need "more or different training" and that the failure to do so was "so likely to result in the violation of constitutional rights[,] that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989).

If this case goes to trial, plaintiff has the burden to prove that San Francisco is liable for excessive force. To withstand summary judgment on this issue, therefore, he must "designate specific facts showing there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. As the non-movant here, plaintiff's evidence must be believed and "all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Plaintiff introduced sufficient evidence that there was a constitutional tort. He testified that he told Officer Scanlan that the first handcuffing hurt and that Officer Hollis ignored his complaint of pain during the ride to the airport police station. Plaintiff also stated under penalty of perjury that Hollis was "much rougher than Scanlan" and handcuffed plaintiff with a "sudden, sharp motion" that caused "significant pain." Hollis allegedly pushed plaintiff "aggressively" into his patrol car for the trip to the Redwood City jail, causing plaintiff to lose his balance and suffer "sharp shoulder pain." There is also evidence that Hollis ignored plaintiff's pleas to remove or reposition the handcuffs due to "severe pain," then told plaintiff he was "full of shit." This evidence is sufficient to go to the jury. The next question in the *Monell* analysis is whether any such tort was pursuant to a city policy.

13

Plaintiff points to testimony from Thomas Cunnane, who was designated by San Francisco to be deposed on the subject of prisoner restraint (Weingus Decl. ¶ 24 (Dec. 14, 2005); Br. 23–24, Pl.'s Motion for Summ. J.). Drawing all inferences in plaintiff's favor, Cunnane's testimony demonstrates that the city trains its police officers to handcuff all people arrested — no matter the severity of the crime — behind their backs unless they have an apparent need for immediate medical care. A mere complaint of pain is not enough to warrant foregoing handcuffing behind the back. In no instance are officers instructed to handcuff an arrestee in front (Weingus Decl. ¶ 24 (Dec. 14, 2005); Exh. 23 (Cunnane Dep. 32–34)).

There is no controlling decision upholding a handcuffing policy such as that of the City and County of San Francisco. The municipality is nevertheless entitled to summary judgment if, when viewing the evidence in the light most favorable to plaintiff, a reasonable jury could *not* conclude that (1) it was obvious that officers needed more or different handcuffing training, (2) failure to provide such training was likely to result in excessive force and (3) city policymakers were deliberately indifferent to the need for different training. *See Harris*, 489 U.S. at 390. Given the facts of this case, the thrust of the inquiry is whether it was likely that arrestees would be hurt unnecessarily because the city told its officers to handcuff them behind their backs unless the prisoners needed immediate medical care, even if they were otherwise complaining of pain.

In *Alexander v. County of Los Angeles*, 64 F.3d 1315 (9th Cir. 1995), the Ninth Circuit held that individual police officers were liable for using excessive force by refusing to remove or loosen a man's handcuffs for thirty-five to forty minutes, despite his statements that he was a dialysis patient. In that case, the court did not mention any evidence indicating that there was an apparent need for immediate medical attention. *Id.* at 1322–23. At the time of plaintiff's arrest, this decision had been published more than eight years earlier. It was controlling on San Francisco police officers.

San Francisco's policy, when seen in the light most favorable to plaintiff, is to refuse to adjust handcuffs for anyone who does not have an immediate need for medical attention. As in *Alexander*, there was no appearance in the instant case of an immediate need for medical attention at the time plaintiff asked to have the handcuffs adjusted. The Ninth Circuit held that,

14

in those circumstances, police had used excessive force. A reasonable jury, fully crediting plaintiff's evidence, similarly could conclude that San Francisco's policy obviously was inadequate to prevent such a tort and that the city thereby exhibited deliberate indifference. This Court therefore cannot hold that the City and County of San Francisco is entitled to summary judgment on the *Monell* excessive-force claim.

### 3. State-law Claims.

#### A. False Arrest and Imprisonment.

Under California statutes, a police officer may arrest a person without a warrant whenever the officer has probable cause to believe that the person committed a public offense in the officer's presence or reasonable cause to believe the person has committed a felony. Cal. Penal Code § 836(a)(1)–(2); *People v. Fein*, 4 Cal.3d 747, 752 (1971). "Reasonable cause [is] that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." *Fein*, 4 Cal.3d at 752. Plaintiff agrees with the San Francisco defendants that the state standards are similar to the federal constitutional standards. For the same reasons as stated in the analysis of the Section 1983 false-arrest claim, there was probable and reasonable cause to arrest plaintiff. All defendants are therefore entitled to summary judgment on the issue of their state-law liability for false arrest and imprisonment.

#### B. Excessive Force.[3]

##### (1) Plaintiff's Motion.

Plaintiff has moved for summary judgment against the San Francisco defendants on the state-law excessive force claim, claiming that those defendants are liable for battery and negligence. Under California law, a police officer may use "reasonable force" to effect a lawful arrest and to maintain the suspect's detention. Cal. Penal Code §§ 835, 835a. The state-law provision is thus consistent with the federal standard. As explained above, a reasonable jury

---

[3] Although the City and County of San Francisco moved for summary judgment on the federal excessive-force claims, it did not do so with regard to the state-law excessive force claim.

15

could conclude that the San Francisco defendants' actions were reasonable under the circumstances. Plaintiff therefore is not entitled to summary judgment on this issue.

### (2) San Mateo Defendants' Motion.

The San Mateo defendants have moved for summary judgment on the issue of their liability on the state-law excessive force claim. The San Mateo Defendants did nothing to apply, authorize condone or support the force that the San Francisco defendants applied to plaintiff. As above with the Section 1983 claim, this issue of causation requires summary judgment in favor of the San Mateo defendants on the state-law excessive-force claim.[4]

### CONCLUSION

For the reasons stated above, plaintiff's motion for summary judgment is **DENIED**. All defendants' motions for summary judgment on the issue of liability for false arrest under Section 1983 and state law are **GRANTED**. The City and County of San Francisco's motion for summary judgment on the Section 1983 *Monell* excessive-force claim is **DENIED**. The San Mateo County defendants' motion for summary judgment on all Section 1983 and state-law excessive-force claims are **GRANTED**. The evidentiary issues are resolved as stated above. This leaves for trial only plaintiff's Section 1983 and state-law claims against the San Francisco defendants for excessive force. Counsel are reminded that this case is set for a jury trial on March 6, 2006, at 7:30 a.m., with a final pretrial conference on February 21 at 2 p.m.

**IT IS SO ORDERED.**

Dated: January 23, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

---

[4] Because summary judgment is entered in favor of the San Mateo defendants on all liability issues, there is no cause to examine their argument that they are entitled to summary judgment on the issues of compensatory and punitive damages.

16